UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAPTIST HEALTH RICHMOND, INC.<br>d/b/a BAPTIST HEALTH RICHMOND<br>801 Eastern Bypass<br>Richmond, KY 40475<br><br>BAPTIST HEALTHCARE SYSTEM, INC.<br>d/b/a BAPTIST HEALTH LEXINGTON<br>1740 Nicholasville Road<br>Lexington, KY 40503<br><br>BAPTIST HEALTHCARE SYSTEM, INC.<br>d/b/a BAPTIST HEALTH CORBIN<br>1 Trillium Way<br>Corbin, KY 40701<br><br>BAPTIST HEALTHCARE SYSTEM, INC.<br>d/b/a BAPTIST HEALTH PADUCAH<br>2501 Kentucky Avenue<br>Paducah, KY 42003<br><br>      Plaintiffs,<br><br>  v.<br><br>XAVIER BECERRA, Secretary<br>United States Department of<br>Health and Human Services,<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>      Defendant. | Case No. 1:23-cv-2722 |

## COMPLAINT

### INTRODUCTION

1. Plaintiffs, Baptist Health Richmond, Inc. d/b/a Baptist Health Richmond (formerly known as Pattie A. Clay Infirmary Association), Baptist Healthcare System, Inc. d/b/a Baptist Health Lexington (formerly known as Baptist Healthcare System, Inc. d/b/a Central Baptist

Hospital), Baptist Healthcare System, Inc. d/b/a Baptist Health Corbin (formerly known as Baptist Healthcare System, Inc. d/b/a Baptist Regional Medical Center), and Baptist Healthcare System, Inc. d/b/a Baptist Health Paducah (formerly known as Baptist Healthcare System, Inc. d/b/a Western Baptist Hospital) (the "Hospitals") by and through their counsel, challenge the Secretary of the United States Department of Health and Human Services' (the "Secretary") calculation of the disproportionate share hospital "DSH" adjustment relating to inpatients enrolled in a Medicare Advantage plan under Part C of the Medicare Act ("Part C").

2. The Hospitals filed jurisdictionally proper appeals challenging the DSH Part C policy with the Provider Reimbursement Review Board ("PRRB") in accordance with 42 U.S.C. § 1395oo(a). The Secretary, however, seeks to prevent the Hospitals' appeals of the Medicare Part C issue. First, although the Court of Appeals and the Supreme Court have invalidated the DSH Part C Policy, the Secretary persists in applying it. *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 16-17 (D.C. Cir. 2011); *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014) ("*Allina I*"); *Allina Health Servs. v. Price*, 863 F.3d 937, 943-44 (D.C. Cir. 2017) ("*Allina II*"); *Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019) (affirming *Allina II*).

3. On August 6, 2020, the Secretary published a notice of proposed rulemaking in which he proposed to retroactively adopt the same policy that was vacated in the *Allina* litigation. 85 Fed. Reg. 47723 (Aug. 6, 2020) (the "Proposed Rule"). The Proposed Rule suggests that, due to the vacatur of the 2004 rule, the Secretary has no rule governing the treatment of Part C days and must therefore engage in retroactive rulemaking. *Id*. at 47724. The Secretary finalized his rule as proposed on June 9, 2023 (the "Final Rule"). 88 Fed. Reg. 37772 (June 6, 2023).

4. On August 17, 2020, before finalized his Proposed Rule, the Secretary issued CMS Ruling 1739-R ("The Ruling"). Exhibit 1. The Ruling deprives the PRRB of jurisdiction over any

pending jurisdictionally proper administrative appeals "regarding the treatment of patient days associated with patients enrolled in Medicare Advantage plans in the Medicare and Medicaid fractions of the disproportionate patient percentage" so that Medicare Administrative Contractors ("MACs") can apply the result of the retroactive rulemaking to those pending appeals once the new rule is in place.

5. The Ruling requires the PRRB to determine whether the appeal "satisfies the applicable jurisdictional and procedural requirements of section 1878 of the [Medicare] Act, the Medicare regulations, and other agency rules and guidelines." *See* Exhibit 1 at 7. The Ruling instructs the PRRB to remand jurisdictionally proper appeals of the "Part C day DSH issue" back to the MACs that issued the payment determinations under appeal. *Id*. at 2, 7-8. The Ruling was not adopted through notice-and-comment rulemaking.

6. The Ruling claims that the Proposed Rule, which has since been finalized, "eliminates any actual case or controversy regarding the hospital's previously calculated SSI and Medicaid fractions and its DSH payment adjustment and thereby renders moot each properly pending claim in a DSH appeal involving the issue resolved by the Supreme Court in *Allina* . . . ." *Id*. at 8.

7. Here, the Hospitals filed jurisdictionally proper appeals with the PRRB, which include a challenge to the DSH determination based on the DSH Part C policy. The PRRB remanded the Hospitals' appeals of this issue, justifying the remand solely on the Proposed Rule, the Final Rule and the Ruling. Exhibit 2.

8. The Ruling and subsequent remands of the Hospitals' appeals of the Medicare Part C issue must be vacated because they were arbitrary, capricious, and contrary to the law. The Ruling and remands violated the Medicare Act and the Administrative Procedure Act ("APA") by

throwing out the Hospitals' rightful appeals of a final Medicare payment determination and implementing substantive payment policy changes without notice-and-comment rulemaking. The Secretary's ruling also violated the Constitution by ending the Hospitals' properly-filed appeals of the Medicare Part C issue and providing no means of review of the Secretary's ruling—or adjudication of that issue in the Hospitals' appeals.

9. For these reasons as set forth herein, the Hospitals respectfully request that this Court issue a ruling:

a. Vacating CMS Ruling 1739-R;

b. Vacating the PRRB's order remanding the Hospitals' appeals of the Medicare Part C issue to the MAC to comply with CMS Ruling 1739-R;

c. Reinstating the Hospitals' appeals of the Medicare Part C issue before the PRRB;

d. In the alternative, issuing a writ of mandamus ordering the Secretary to rescind CMS Ruling 1739-R and reinstate the Hospitals' appeals of the Medicare Part C issue before the PRRB;

e. Ordering the Secretary to recalculate the Hospitals' DSH payments for the Fiscal Period at issue as directed by the *Allina* Court and to make prompt payment of any additional amounts due to the Hospitals, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2), 42 U.S.C. § 1395g(d), or both;

f. Requiring the agency to pay legal fees and costs of suit incurred by the Hospitals; and

g. Providing such other relief as the Court may consider appropriate.

**JURISDICTION AND VENUE**

10. This action arises under the Medicare Statute, title XVIII of the Social Security Act, 42 U.S.C § 1395 *et seq.*, and the APA, 5 U.S.C. § 551 *et seq.*

11. Jurisdiction is proper under 42 U.S.C. § 1395oo(a)(1)(A)(ii), 42 U.S.C. § 1395oo(f)(1), 28 U.S.C. § 1331, and 28 U.S.C. § 1361.

12. Venue is proper in this judicial district in accordance with 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e).

**PARTIES**

13. The Plaintiffs in this action are hospitals that participate in the Medicare program.

   a. Plaintiff Baptist Health Richmond, Inc. d/b/a Baptist Health Richmond, provider number is 18-0049 and the cost reporting period at issue in this action is the fiscal year ending in 2014.

   b. Plaintiff Baptist Healthcare System, Inc. d/b/a Baptist Health Lexington, provider number is 18-0103 and the cost reporting period at issue in this action is the fiscal year ending in 2014.

   c. Plaintiff Baptist Healthcare System, Inc. d/b/a Baptist Health Corbin, provider number is 18-0080 and the cost reporting period at issue in this action is the fiscal year ending in 2014.

   d. Plaintiff Baptist Healthcare System, Inc. d/b/a Baptist Health Paducah provider number is 18-0104 and the cost reporting period at issue in this action is the fiscal year ending in 2014.

14. Defendant, Xavier Becerra, is the Secretary of the United States Department of Health and Human Services ("HHS") and is sued in his official capacity. HHS is the Federal agency

that administers CMS. CMS is the Federal agency to which the Secretary has delegated administrative authority over the Medicare program, which is established under title XVIII of the Social Security Act. *See* 42 U.S.C. § 1395 *et seq*. References to the Secretary are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

15. Part A of the Medicare statute addresses "inpatient hospital services." 42 U.S.C. § 1395d(a)(l). Beginning in 1983, the Medicare program pays most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS"). *See* 42 U.S.C. § 1395ww(d)(l)-(5); 42 C.F.R. Part 412. Under PPS, Medicare pays standardized amounts per discharge, subject to certain payment adjustments. *Id*. The DSH payment is one type of PPS payment adjustment. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

16. A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage" ("DSH patient percentage"). *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). Hospitals that serve a disproportionate share of low-income patients may be entitled to an upward percentage adjustment to the standard PPS rates. *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106. The DSH patient percentage serves as a proxy for utilization by low-income patients, establishes a hospital's qualification as a DSH, and determines the amount of the DSH adjustment. *See* 42 U.S.C. § 1395ww(d)(5)(F)(iv) and (vii)–(xiii); 42 C.F.R. § 412.106(d). The DSH patient percentage is comprised of the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

17.     The first fraction, commonly known as the "Medicare fraction" or "SSI fraction," is defined as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter . . .

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).  The Medicare fraction is computed annually by CMS, and the MACs must use CMS's calculation to compute a hospital's DSH payment adjustment.  *See* 42 C.F.R. § 412.106(b)(2)–(3).

18.     The other fraction is the "Medicaid fraction" and is defined as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX [*i.e.*, the Medicaid program], but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).  According to CMS's regulations, it is the MAC's obligation to determine the Medicaid fraction for each provider: "The [MAC] determines . . . the number of the hospital's patient days of service for which patients were eligible for Medicaid but not entitled to Medicare Part A, and divides that number by the total number of patient days in the same period."  42 C.F.R. § 412.106(b)(4).

### Medicare Part C

19.     In 1997, Congress amended the Medicare statute by adding a new Part C.  Balanced Budget Act of 1997 ("BBA"), Pub. L. No. 105-33, § 4001, codified at 42 U.S.C. § 1395w-21.  Part C governs the Medicare Advantage program (formerly known as the Medicare+Choice program).

After the 1997 amendment, a Medicare beneficiary may elect to receive Medicare benefits "under this subchapter" through one of two means: "(A) through the original Medicare fee-for-service program under parts A and B, or (B) through enrollment in a [Medicare Advantage] plan under this part [*i.e.*, part C]." *See* 42 U.S.C. § 1395w-21(a)(l); *see also* 42 C.F.R. § 422.50; 63 Fed. Reg. 34968 (June 26, 1998). Through the creation of Part C, Medicare beneficiaries who elected for coverage under Medicare Part C were no longer entitled to payments for their care under Part A.

### The Secretary's Policy on Counting Part C Days in the DSH Calculation

20. Although the Medicare Advantage program was established in 1997, the Secretary did not publish any rule or instruction governing how to count these Part C days in the Medicare DSH calculation until 2003. Prior to that time, "the Secretary treated Part C patients as *not* entitled to benefits under Part A." *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1106 (D.C. Cir. 2014) ("*Allina I*") (emphasis in original). From 1986 through 2004, the Secretary interpreted the term "entitled to benefits under Part A" to mean covered, or paid, by Medicare Part A. *See id*. at 1108 (describing the agency's "policy . . . of excluding Part C days from the Medicare fraction and including them in the Medicaid fraction"); *id*. at 1106 ("Prior to 2003, the Secretary treated Part C patients as *not* entitled to benefits under Part A.").

21. This policy resulted in the addition of Medicare Advantage days in the Medicaid fraction's denominator count of total days, and in the Medicaid numerator for patients who were also Medicaid eligible. To clarify the policy for Medicare Advantage days in the FFY 2004 Inpatient Proposed Rule, the Secretary proposed:

> [O]nce a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage. These patient days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for the M+C beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction.

8

*See* 68 Fed. Reg. 27154, 27208 (May 19, 2003).  The Secretary opined that there would be no major financial impact associated with this proposal.  *See id.* at 27416.  The Secretary proposed to amend the existing DSH regulation to effectuate this clarification of the existing rule.  *See id*. at 27229–30 (proposing amendments to DSH regulation at § 412.106 in order to accomplish several proposed changes to the rule).  However, the final rule published on August 1, 2003 did not include this or other aspects of the 2003 proposed rule relating to the DSH payment.  *See* 68 Fed. Reg. 45346, 45422 (Aug. 1, 2003).  A year later, the Secretary published another final rule adopting a policy change with respect to the counting of Medicare Part C days in the Medicare DSH payment calculation.  *See* 69 Fed. Reg. 48916, 49099, 49246 (Aug. 11, 2004); *see also* 72 Fed. Reg. 47130, 47384 (Aug. 22, 2007) (discussing the 2004 "policy change").  In this 2004 final rule, the Secretary "adopt[ed] a policy" and "revis[ed]" the DSH regulation to begin to count Medicare Advantage patient days as Medicare Part A patient days in the SSI fraction, effective October 1, 2004.  69 Fed. Reg. at 49099.  The adoption of this new policy was accomplished by deleting the word "covered" where it previously appeared in the definition of the Medicare fraction in 42 C.F.R. § 412.106(b)(2)(i).  *See id*.; *compare* 42 C.F.R. § 412.106(b)(2)(i) (2002) *with* 69 Fed. Reg. at 49246 (revised text of § 412.106(b)(2)(i)).  The Secretary also declined to adopt his proposal to include Part C days in the Medicaid fraction.  69 Fed. Reg. at 49099.

22.     The Secretary's sole explanation for the agency's 2004 determination to begin counting Medicare Part C days as Medicare Part A days in the SSI fraction (effective October 1, 2004) was that Medicare Advantage enrollees "are still, in some sense, entitled to benefits under Medicare Part A." 69 Fed. Reg. at 49099.  It necessarily follows based on identical statutory text related to both fractions ("entitled to benefits under part A") that the Secretary's policy to include

9

such days in the SSI fraction also entails their exclusion in the Medicaid fraction, to the extent patients are dually eligible for Medicaid.

23.     In 2007, the Secretary published in the Federal Register notice of a further change to the DSH regulation, which was adopted without advance notice or opportunity for comment. *See* 72 Fed. Reg. at 47384.  The 2007 notice stated that the agency "inadvertently" failed to change the text of the regulation in 2004 to the extent necessary "to conform to the preamble language." *Id*.  Accordingly, the Secretary decided to make a "technical correction" to the text of Section 412.106(b)(2) in order to effectuate "the policy iterated in that [2004] rule." *Id*.  Following that correction, the portion of the regulation defining the numerator and denominator of the SSI fraction now refers to patients who are "entitled to Medicare Part A (or Medicare Advantage (Part C))." *Id*. at 47411 (amending § 412.106(b)(2)(i)(B) and (iii)(B)).

## The *Allina I* and *Allina II* Litigation

24.     The United States Court of Appeals for the District of Columbia held that the policy regarding Part C days adopted by the Secretary in 2004 was "deficient" from a notice standpoint and was therefore vacated.  *Allina I*, 746 F.3d at 1111.  In particular, the Court of Appeals agreed with this Court that "an agency must cogently explain why it has exercised its discretion in a given manner" and that "[i]n this case, the Secretary failed to do so…"  *See Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 94 (D.D.C. 2012); *see also FCC v. Fox TV Stations, Inc.*, 129 S. Ct. 1800, 1811 (2009) (explaining that agencies "may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books").  The holding was based on the fact that the Secretary's explanation for his policy change was limited to the following cursory statement: "once Medicare beneficiaries elect Medicare Part C coverage, they are still, in some sense, entitled to benefits under Medicare Part A."  69 Fed. Reg. at 49099.

25. In addition, as the *Allina I* Court also held, the agency violated the notice-and-comment rulemaking requirements of the APA and the Medicare statute because the new rule adopted in 2004 was the opposite of the rule proposed by the Secretary in 2003, and the public was not afforded adequate notice of, or a meaningful opportunity to comment upon, the rule that the agency actually adopted. *See Allina I*, 746 F.3d at 1108 ("[A]gencies may not 'pull a surprise switcheroo on regulated entities' . . . [and] [t]he word 'clarify' does not suggest that a potential underlying major issue is open for discussion.") (internal citations omitted).

26. The Court of Appeals remanded to the CMS Administrator to decide, in the absence of the vacated 2004 rule, how Part C days should be treated for the purposes of DSH. On December 2, 2015, the Administrator issued a decision, simply reaffirming the Secretary's prior position and concluding that the same policy could be adopted even in absence of the 2004 regulation. *See Allina Health Servs. v. Sebelius*, No. 1:10-cv-01463-RMC, CMS Adm'r Dec. (D.D.C. Dec. 2, 2015). In other words, CMS has continued to include Part C days in the Medicare fraction and exclude Part C days in the Medicaid fraction, despite not having a valid policy on the books for doing so.

27. The Secretary's continued treatment of Part C days as "days entitled to Part A" was challenged in *Allina II*. There, the D.C. Circuit Court again ruled against the Secretary, holding that he does not have authority to adopt this policy absent notice-and-comment rulemaking. *See Allina II*, 863 F.3d at 944. Specifically, the Court held that the Medicare statute required notice-and-comment rulemaking for any 1) "rule, requirement or other statement of policy" that 2) "establishes or changes" 3) a "substantive legal standard" that 4) governs "payment for services." *Id.* at 943 (citing 42 U.S.C. § 1395hh(a)(2), (b)(1)). Finding that each of these four requirements was met, the D.C. Circuit Court once again invalidated the Secretary's on-going

policy for failure to undertake notice-and-comment rulemaking as required by the Medicare statute.

28. The Court also stated that the Secretary "could not circumvent this [notice-and-comment] requirement by claiming that it was acting by way of adjudication rather than rulemaking." *Allina II*, 863 F.3d at 945.

29. On June 3, 2019, the Supreme Court affirmed the Court of Appeals' ruling in *Allina II*. *Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019). The Supreme Court held that the Secretary's 2014 application of the 2004 Part C days policy required notice-and-comment rulemaking under section 1395hh(a)(2) of the Medicare statute. *Id*. at 1810-14. In addition, the Supreme Court's decision did not disturb the Court of Appeals' ruling that the readopted 2004 policy is invalid under 42 U.S.C. § 1395hh(a)(4) because the Secretary failed to engage in notice-and-comment rulemaking. *Id*. at 1816.

## The Rule

1. On August 6, 2020, the Secretary issued a proposed rule titled "Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage." 85 Fed. Reg. 47723 (Aug. 6, 2020). The Secretary finalized his Proposed Rule on June 9, 2023. 88 Fed. Reg. at 37772. The stated purpose of the rule is to establish a policy regarding "the treatment of days associated with [Medicare] beneficiaries enrolled in Medicare Part C" for the purposes of calculating Medicare DSH payments for cost reporting periods occurring prior to October 1, 2013. *Id*. at 37790.

2. The Secretary states in his Final Rule that it is necessary to apply his policy retroactively because he has no rule governing the treatment of Part C days for cost reporting periods occurring prior to October 1, 2013. *Id*. at 37773-74. However, the Secretary ignores the

fact that he had a policy prior to 2004 that governed the treatment of Part C days in the DSH calculation, and that policy continues to apply.

3. The Secretary also asserts that retroactive rulemaking is (a) necessary to comply with the statutory requirement to calculate Medicare DSH payments, and (b) in the "public interest" because, absent retroactive rulemaking, the Secretary "would be unable to calculate and confirm proper DSH payments for the time periods before FY 2014…." *Id*. at 37775.

### **The Ruling (CMS Ruling 1739-R)**

4. On August 17, 2020, the Secretary issued Ruling CMS-1739-R. The Ruling instructs the PRRB to remand jurisdictionally-proper appeals that include the *Allina II* issue to the applicable MACs to "recalculate the provider's DSH payment adjustment in accordance with the Secretary's forthcoming rule":

> If the administrative tribunal finds that the applicable jurisdictional and procedural requirements are satisfied for a given claim on the Part C day DSH issue and that any NPR that is the basis for the claim issued before CMS's forthcoming final rule or that arise from an appeal based on an untimely NPR under 42 U.S.C. 1395oo(a)(1)(B) or (C) and any subsequently issued NPR for that fiscal year pre-dates the new final rule then the appeals tribunal will issue a brief written order, remanding each such claim that qualifies for relief under the Ruling to the appropriate Medicare contractor for calculation of the DSH payment adjustment for the period at issue pursuant to the forthcoming rule.

*See* Exhibit 1 at 7-8. As a result, before issuing a remand, the PRRB must find that the claim meets "applicable jurisdictional requirements." However, the Ruling states:

> By this Ruling, the Administrator provides notice that the PRRB and other Medicare administrative appeals tribunals lack jurisdiction over the Part C days issue for years before FY 2014 as to any appeals arising from NPRs from that period that pre-dates the forthcoming rule or that arise from an appeal based on an untimely NPR under 42 U.S.C. 1395oo(a)(1)(B) or (C) and any subsequently issued NPR for that fiscal year pre-dates the new final rule.

*See* Exhibit 1 at 6-7.  The Ruling also states that it "eliminates any actual case or controversy regarding" the *Allina II* issue providing the claim is otherwise jurisdictionally proper.  Exhibit 1 at 8-9.

5. The Ruling is a final agency determination for the purposes of judicial review because it will deprive the Hospitals of further opportunity for review.  The Secretary's Final Rule retroactively implements the very policy that it has been applying illegally for decades.  As a result, when the Hospitals' appeals of the Medicare Part C issue are remanded to the MAC, it is unlikely that the MAC will make any adjustments to the Hospitals' cost report.  Absent any adjustments, the PRRB will not have jurisdiction for further review.

## The Medicare Appeals Process

6. It has always been CMS's policy that: "It is not necessary for hospitals serving a disproportionate number of low-income patients . . . to formally apply for a disproportionate share adjustment."  51 Fed. Reg. 31454, 31457 (Sept. 3, 1986).  It is unnecessary for a provider to formally claim DSH on the as-filed cost report because the "final determination of a hospital's eligibility for, and amount of, any disproportionate share adjustment will be made by the [MAC] at the time of the year-end settlement of [a] cost report."  *Id*. at 31458.  But, "[u]pon receipt of the Notice of Program Reimbursement, all hospitals have the right to appeal the [MAC]'s determination."  *Id*.

7. Section 1878(a) of the Social Security Act entitles a provider of services under the Medicare program to a hearing before the PRRB if three prerequisites are met: (i) the provider is dissatisfied with a final determination of the Secretary as to the amount of the payment under the Medicare Act; (ii) the provider files a request for hearing within 180 days of the final determination (typically an NPR); and (iii) the amount in controversy is at least $10,000 for an individual appeal

or $50,000 for a group appeal. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. If an appeal satisfies these requirements, the PRRB has jurisdiction to hear the appeal. *Id*.

8.   When the PRRB has jurisdiction to hear an appeal, but the appeal involves a statute, regulation, or policy that the PRRB is without authority to overturn, the PRRB may, through its own motion or upon request of the provider, grant expedited judicial review ("EJR") of the appeal. 42 U.S.C. § 1395oo(f)(1). If EJR is granted, the provider can seek judicial review in federal court without first having a hearing before the PRRB. *Id*. The provider must file its complaint no later than 60 days after receiving notice of the PRRB's decision to grant EJR. *Id*.

9.   The Medicare statute allows providers to bring a civil action pursuant to the APA through EJR. *See* 42 U.S.C. § 1395oo(f)(l).

## PROCEDURAL BACKGROUND

10.   The Hospitals filed jurisdictionally proper appeals with the PRRB on the grounds that the Medicare fraction that CMS used to calculate DSH payments improperly included Part C days, and the Medicaid fraction that CMS unlawfully used to calculate those payments improperly excluded Medicaid-eligible Part C days from the numerator. The Hospitals added their appeals to the PRRB group appeal titled the Baptist Health 2014 DSH Part C Days (Pre 10/1/2013) CIRP Group (PRRB Case No. 17-0116GC).

11.   The Hospitals filed their appeals in a timely manner in accordance with 42 U.S.C. § 1395oo(a).

12.   The PRRB remanded the Hospitals' appeals of the Medicare Part C issue to the MAC pursuant to Ruling CMS-1739-R for recalculation of the DSH payment adjustment. The remand was issued July 20, 2023.

13.     The CMS Administrator did not review the PRRB's remand letter and CMS has stated that no payment effect is anticipated on remand.  As a result, the apparent effect of the PRRB's remand decision is to confirm the payments that the Hospitals previously received and which are part of their appeals to the PRRB and, therefore, constitute final agency action for purposes of judicial review.

## CAUSES OF ACTION

### COUNT I
### Violation of the Medicare Act
### (Hospitals' Appeal Rights)

14.     The Hospitals hereby incorporate by reference paragraphs 1 through 42.

15.     The Hospitals are entitled to appeal final payment determinations made by the MAC to the PRRB and to obtain interest on any recovery ultimately received.  42 U.S.C. § 1395oo(f).

16.     Through CMS Ruling 1739-R and the subsequent remand by the PRRB, the Secretary violated his nondiscretionary duty to permit the Hospitals to appeal for payment and interest required under the Medicare Act.

17.     The Secretary effectively revoked the Hospitals' statutory right to appeal the Medicare Part C issue.  The Secretary's actions have harmed the Hospitals and they are entitled to relief.

### COUNT II
### Violation of the Medicare Act
### (Notice-and-Comment Rulemaking)

18.     The Hospitals hereby incorporate by reference paragraphs 1 through 46.

19. The Medicare Act requires the Secretary to subject any rules, requirements, or other policy statements that impact a provider's payment to notice-and-comment rulemaking. 42 U.S.C. § 1395hh(a)(2); *Allina Health Servs.*, 139 S. Ct. at 1809.

20. Although CMS Ruling 1739-R impacts the Hospitals' reimbursement under the Medicare program, it was not adopted through notice-and-comment rulemaking as required under the Medicare statute.

21. The Secretary's actions have harmed the Hospitals and they are entitled to relief.

## COUNT III
### Violation of the APA

22. The Hospitals hereby incorporate by reference paragraphs 1 through 50.

23. Through CMS Ruling 1739-R, the Secretary acted arbitrarily, capriciously, in violation of the law and thus violated the APA's prohibitions against such actions. 5 U.S.C. § 706(2).

24. CMS Ruling 1739-R arbitrarily and capriciously disrupted the Hospitals' proper appeals of the Medicare Part C issue and blocked the Hospitals from their statutorily-provided right to pursue the same.

25. The Secretary's ruling violated the Medicare Act by trying to implement changes to rules, requirements, or other policy statements that impact provider reimbursement without subjecting the same to notice-and-comment rulemaking. *See* 42 U.S.C. § 1395hh(a).

26. Thus, by CMS Ruling 1739-R's attempt to prematurely enforce a proposed rule, the Secretary acted contrary to the law and in violation of the APA.

27. The Secretary's actions have harmed the Hospitals and they are entitled to relief.

## COUNT IV
### Mandamus

28. The Hospitals hereby incorporate by reference paragraphs 1 through 56.

29. The Hospitals are entitled to a writ of mandamus prohibiting the PRRB from remanding the Hospitals' appeals of the Medicare Part C issue to the MAC. *See* 28 U.S.C. § 1361.

30. The Hospitals have a right to exercise their appeal rights under the Medicare Act. The Hospitals successfully preserved their appeal rights under 42 U.S.C. § 1395oo for the placement of Part C Days in the DSH payment calculation and the appeals were properly before the PRRB.

31. The Secretary has a nondiscretionary duty to permit the Hospitals to exercise their appeal rights granted by statute or otherwise comply with the law. 42 U.S.C. § 1395oo.

32. The Secretary's ruling halted the Hospitals' appeals of the Medicare Part C issue, removing any ability to adjudicate that issue and leaving no other adequate remedy.

33. Thus, the Hospitals request an order from this Court.

## COUNT V
## All Writs Act

34. The Hospitals hereby incorporate by reference paragraphs 1 through 62.

35. The Secretary violated the Medicare Act and the APA by ordering the PRRB to remand the Hospitals' appeals of the Medicare Part C issue.

36. The All Writs Act provides that federal district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

37. This Court, having jurisdiction over this Complaint, should issue an order reversing the PRRB's remand letters under the Secretary's improper ruling.

## COUNT VI
## Violation of Due Process

38. The Hospitals hereby incorporate by reference paragraphs 1 through 66.

39. The Hospitals have a protected liberty or property interest in the reimbursement provided by CMS.

40. The Hospitals had a right to appeal underpayments by CMS, presented that appeal to CMS, and were still exercising their statutory right to appeal such underpayments until the Secretary disrupted the same with CMS Ruling 1739-R.

41. Through CMS Ruling 1739-R, the Secretary disrupted and effectively ended the Hospitals' proper appeals of the Medicare Part C issue, depriving the Hospitals of adequate procedural protection to adjudicate that issue.

42. By doing so, the Secretary violated the Hospitals' constitutional right to procedural due process.

43. Such a constitutional violation is a question of federal law over which this Court has jurisdiction. 28 U.S.C. § 1331.

44. Depriving the PRRB of jurisdiction over the Hospitals' appeals through the Ruling violates the due process rights of the Hospitals who, precisely because of that deprivation, may not now pursue their appeals of the Medicare Part C issue in front of the PRRB.

**REQUEST FOR RELIEF**

45. The Plaintiff Hospitals request an Order:

   a. Vacating the Secretary's ruling, CMS Ruling 1739-R;

   b. Vacating the PRRB's order remanding the Hospitals' appeals of the Medicare Part C issue to the MAC to comply with CMS Ruling 1739-R;

   c. Reinstating the Hospitals' appeals of the Medicare Part C issue before the PRRB;

    d. In the alternative, issuing a writ of mandamus ordering the Secretary to rescind CMS Ruling 1739-R and reinstate the Hospitals' appeals of the Medicare Part C issue before the PRRB;

    e. Directing the Secretary to recalculate the Hospitals' DSH payments for the Fiscal Periods at issue as directed by the *Allina* Court and to make prompt payment of any additional amounts due to the Hospital, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2), 42 U.S.C. § 1395g(d), or both;

    f. Requiring the agency to pay legal fees and costs of suit incurred by the Hospitals; and

    g. Providing such other relief as the Court may consider appropriate.

Respectfully submitted,

*/s/ Daniel J. Hettich*
Daniel J. Hettich, D.C. Bar No. 975262
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20006
(202) 737-0500 (phone)
(202) 626-3737 (fax)
DHettich@kslaw.com

*Attorney for Plaintiff*

Date: September 18, 2023